**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas & Kristina Petersen; and Securityminded Technologies, LLC,, <br><br> Plaintiffs/Claimants, <br><br> vs. <br><br> EMC Telecom Corporation; Erik Zeiner; Andrea McCoy; Kenneth McCoy; Nichole Malero; and Marco Arce, <br><br> Defendant/Respondents. | No. CV-09-2552-PHX-GMS <br><br> **ORDER** |

Three motions are currently pending before the Court: (1) the Motion to Dismiss the Petition to Compel Arbitration (Dkt. # 22), filed by Defendants Erik Zeiner, Andrea McCoy, Kenneth McCoy, Nichole Malero, and Marco Arce (collectively the "Individual Defendants"); (2) the Motion for Summary Disposition Against Defendant EMC Telecom Corporation (Dkt. # 25), filed by Plaintiffs Thomas Peterson, Kristina Petersen, and Securityminded Technologies, LLC (collectively "Plaintiffs"); and (3) Plaintiffs' Motion for Leave to File a Surreply to the Motion to Dismiss (Dkt. # 31). As set forth below, the Court denies the Individual Defendants' Motion to Dismiss, grants Plaintiff's Motion for Summary Disposition, and denies Plaintiff's Motion for Leave to File a Surreply.[1]

---

[1] The parties' requests for oral argument are denied as the Court has determined that oral argument will not aid in its decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

This case arises out of an Asset Purchase Agreement (the "Agreement") between Plaintiffs and EMC Telecom Corporation ("EMCT").[2] Under this Agreement, Plaintiffs agreed to sell Securityminded Technologies, Inc. ("SMT") to EMCT for $293,223. After an initial down payment of $25,000 in August 2008, however, EMCT allegedly breached the Agreement when it failed to make subsequent payments. According to Plaintiffs, the Individual Defendants, who are all directors and officers of EMCT, facilitated the breach through fraud and misrepresentation. Plaintiffs further allege that the Individual Defendants are alter-egos of EMCT.

On December 7, 2009, Plaintiffs filed a Petition to Compel each of the Defendants to arbitrate these claims pursuant to 4 U.S.C. § 9. (Dkt. # 1.) According to Plaintiffs, arbitration is required because EMCT explicitly agreed to arbitrate any dispute arising out of the Agreement. Specifically, Plaintiffs point to Section 35.3 of the Agreement (the "Arbitration Clause"), which provides:

> Except as otherwise expressly provided in this Agreement, or any related agreements, any controversy, dispute or claim under, arising out of, in connection with or in relation to this Agreement or any related agreements, including the negotiation, execution, interpretation, construction, coverage, scope, performance, non-performance, breach, termination, validity or enforceability of this Agreement or any related agreements will be settled, at the request of either party, by arbitration conducted in accordance with this Article 35 and the then existing rules for commercial arbitration of the American Arbitration [sic] The arbitration will be governed by the Federal Arbitration Act (9 U.S.C. ss.ss. 1-16). The arbitration of such issues, including the determination of any amount of damages suffered by any party hereto by reason of the acts or omissions of either party, will be final and binding upon the parties to the maximum extent permitted by Law.

(Dkt. # 1 at 32.) Plaintiffs further contend that the Individual Defendants, although not parties or signatories to the Agreement, are required to arbitrate these claims as EMCT's

---

[2]After Plaintiffs and EMCT entered into the Agreement, EMCT changed its name to 2000-2008 EMCT Acquisition Corporation. (Dkt. # 23 at ¶ 2.) Nevertheless, to avoid confusion, the Court's order refers to both entities as EMCT.

agents and/or alter-egos.

Although EMCT does not challenge the validity of the arbitration provision, the Individual Defendants assert that the Arbitration Clause does not apply to them. According to the Individual Defendants, the Agreement expressly limits arbitration to disputes with EMCT. They point to Section 36.1 of the Agreement which states,

> Nothing in this Agreement, expressed or implied, is intended to confer on any Person other than the parties hereto or respective permitted successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Agreement.

(Dkt. # 1 at 34.) Based on this provision, the Individual Defendants now move to dismiss Plaintiff's Petition to Compel Arbitration, as against them, pursuant to Federal Rule of Civil Procedure 12(c).[3]

## LEGAL STANDARD

Congress enacted the Federal Arbitration Act (the "Act") to "advance the federal policy favoring arbitration agreements." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). Pursuant to this policy, courts will "rigorously enforce" arbitration agreements and "must order arbitration if [they are] satisfied that the making of the agreement for arbitration is not in issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)). Hence, when a party brings a petition to compel arbitration, the Court must "determine (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lowden*, 512 F.3d at 1217 (citation omitted).

Pursuant to the Act, a party opposing a petition for arbitration may demand a jury trial when issues respecting arbitrability are at issue. *See* 9 U.S.C. § 4. Before proceeding to trial,

---

[3]The parties characterize the Individual Defendants' Motion as a 12(b)(6) motion to dismiss. Nevertheless, because these Defendants have filed a responsive pleading (*see* Dkt. # 23) to the Petition, the Motion is more correctly treated as one for judgment on the pleadings. *See Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004). This mischaracterization, however, does not alter the Court's analysis because motions filed under Rule 12(c) are generally assessed under the same standards as those raised pursuant to Rule 12(b)(6). *See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980).

- 3 -

however, the party opposing arbitration may also move to dismiss a petition for failure to present factual allegations sufficient to "raise a right to [arbitration] above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see* Fed. R. Civ. P. 12(b)(6). Should the petition raise sufficient allegations to survive the motion to dismiss, and unless the petition can be resolved on summary judgment, any remaining issues shall be resolved at trial. *See Doctor's Associates v. Distajo*, 107 F.3d 126, 129–30 (2nd Cir. 1997); 9 U.S.C. § 4.

## DISCUSSION

Although there is a strong federal policy in favor of arbitration, arbitration is "'a matter of contract[,]" and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Techs. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Hence, as a general rule, a non-signatory "cannot be required to arbitrate pursuant to an agreement's arbitration clause which the party did not sign." *Legacy Wireless Servs. v. Human Capital, LLC*, 314 F. Supp.2d 1045, 1053 (D. Or. 2004). This general rule, however, is not without exception. According to the Ninth Circuit, a non-signatory to an "arbitration agreement[] may be bound by the agreement under" traditional "principles of contract and agency law." *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986). Based on these principles, federal courts have recognized five doctrines justifying the application of an arbitration clause to a non-signatory: "'(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

**I. Plaintiffs have Adequately Alleged Facts Suggesting that the Individual Defendants Might Be Subject to Arbitration.**

As an initial matter, the Court rejects the Individual Defendants' argument that the plain language of the Agreement provides them with absolute protection from arbitration under these traditional theories of contract and agency law. According to the Individual

Defendants, Section 36.1 of the Agreement expressly limits arbitration to Plaintiffs and EMCT. Nevertheless, while Section 36.1 provides that "[n]othing" in the "Agreement . . . is intended to confer on" a non-party "any obligations[]or liabilities" (Dkt. # 1 at 34), that provision provides no protection where traditional principles of contract and agency law would treat a non-signatory as a party to the contract. Indeed, several courts have applied these principles to bind a non-signatory to arbitration even when the arbitration agreement explicitly limited the duty to arbitrate to the parties of the agreement. In *Pullen v. Victory Woodwork, Inc.*, 2007 WL 1847633, at *3 (E.D. Cal. 2007), for instance, the court held that estoppel required arbitration, even though the arbitration clause was "expressly limited" to claims between parties to the underlying contract. *See World Rentals and Sales, LLC v. Volvo Constr. Equip.*, 517 F.3d 1240, 1247 n. 6, 1248–49 (11th Cir. 2008) (noting that "an arbitration agreement limited to immediate parties" may still bind a non-signatory under those circumstances where incorporation by reference, agency, alter-ego theory, and estoppel so require); *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 446 (3d Cir. 1999) (considering whether a non-signatory was bound to an arbitration agreement based on agency and alter-ego theory, even though the arbitration agreement was strictly limited to those who signed the agreement); *Calamia v. Riversoft, Inc.*, 2002 WL 3177991, at *5 (E.D. N.Y. 2002) (holding that veil-piercing could bind a non-signatory to arbitration, even though the arbitration clause was "specifically" limited to controversies between the parties).

    These courts have so held because application of an arbitration agreement to a non-signatory is justified only when "traditional principles of contract and agency law" treat the non-signatory as being "akin to [the] signatory of the underlying agreement." *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 194 (3d Cir. 2001) Thus, while the Individual Defendants argue that they cannot be compelled to arbitrate because the plain language of the Agreement limits arbitration to EMTC, this argument does not apply where traditional contract and agency principles (i.e. incorporation by reference, assumption, agency, veil-piercing, and estoppel) place the Individual Defendants in EMTC's shoes. *See id.*

Having, therefore, determined that traditional principles of contract and agency law apply to the Individual Defendants, the Court also finds that Plaintiffs have adequately set forth facts that potentially justify application of the arbitration clause on the basis of these principles. In their Petition, Plaintiffs assert three basis for compelling arbitration: (1) agency, (2) alter-ego; and (3) estoppel. And while agency theory does not provide a basis compelling arbitration in this case, Plaintiffs have alleged sufficient facts, which if proven, raise a plausible right to relief against the Individual Defendants on the basis of veil-piercing and estoppel.

### A. Agency

To the extent Plaintiffs argue that the Individual Defendants are subject to the Arbitration Clause on the basis of agency, that argument fails under the facts alleged in this case. While it is well established that agency theory can justify applying an arbitration clause to a non-signatory, *see Letizia*, 802 F.2d at 1187–88, this is only true when "a signatory has brought claims against non-signatory agents and the agents then seek to invoke the arbitration clause against the *signatory*." *Legacy Wireless*, 314 F. Supp.2d at 1054. "The situation is materially different[,]" however, "when, as in the case at bar, a signatory seeks to invoke an arbitration clause against a *non-signatory*." *Id.*; *see also Bel-Ray Co.*, 181 F.3d at 445 (refusing to enforce an arbitration clause against an agent who did not sign the underlying agreement). Indeed, unless otherwise agreed, "an agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract." *Id.* (citation omitted); *see also Legacy Wireless*, 314 F. Supp.2d at 1054 (quoting Restatement (Second) of Agency § 320).

Thus, even though the Individual Defendants were allegedly EMTC's agents and employees, it appears that they were acting on behalf of EMTC, a disclosed principal, when they negotiated the terms of the Agreement. Moreover, there is no indication that the Individual Defendants agreed to be bound by EMTC's contracts. Agency theory, therefore, cannot serve as a basis for compelling the Individual Defendants to arbitrate. *See Bel-Ray Co.*, 181 F.3d at 445; *Legacy Wireless*, 314 F. Supp.2d at 1054; *see also Clausen v. Watlow*

*Elec. Mfg.*, 242 F. Supp.2d 877, 883–84 (D. Or. 2002) (declining to bind an agent to the principal's arbitration agreement because the agent had merely signed the underlying agreement in his representative capacity).

### B. Veil-Piercing/Alter Ego

Plaintiffs, have adequately alleged that the Individual Defendants are subject to arbitration as alter-egos of EMTC. When considering whether a non-signatory may be compelled to arbitrate on the basis of alter ego theory, courts look to whether the non-signatory "so dominated a signatory that it is appropriate to pierce the signatory's corporate veil and hold the non-signatory liable on the contract containing the arbitration provision." *See World Rentals and Sales*, 517 F.3d at 1248. In the Ninth Circuit,[4] veil-piercing is a fact-intensive inquiry that is appropriate "'where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling [entity's] business instead of its own.'" *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 839 n. 6 (9th Cir. 2004) (emphasis omitted) (quoting *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997)).

In this case, Plaintiffs have alleged that the Individual Defendants operated EMTC in a manner that may justify piercing the corporate veil. In their Petition, Plaintiffs set forth facts suggesting that the Individual Defendants are common shareholders of EMTC and that the business was undercapitalized. Plaintiffs further allege that the Individual Defendants induced Plaintiffs to enter the Agreement by fraudulently representing EMTC's assets—i.e. that the Individual Defendants used EMTC to perpetuate a fraud. And though the Individual Defendants present affidavit evidence to the contrary, the Court cannot consider such extrinsic evidence when resolving a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Accordingly, should the factfinder conclude that the Individual Defendants are alter egos of

---

[4]The Court applies federal common law in determining whether the Individual Defendants are subject to arbitration on alter-ego theory because "the arbitrability of a dispute[] is controlled by application of federal substantive law rather than state law." *letizia*, 802 F.2d at 1187 (citation omitted).

EMTC, arbitration would be proper.

### C. Estoppel

The Court also finds that estoppel may bind the Individual Defendants to the Arbitration Clause. Under principles of equitable estoppel, a party is precluded "'from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that [the] contract imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). Where a signatory attempts to bind a non-signatory to an arbitration agreement, the signatory may do so only when the non-signatory "'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" *Id.* (quoting *DuPont*, 269 F.3d at 199). In other words, the non-signatory may be subject to arbitration when it seeks to enforce the terms of an agreement or otherwise take advantage of those terms. *Id.* Additionally, the signatory must demonstrate that the "subject matter of the dispute" against the non-signatory is "intertwined with the contract providing for arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (citing *Sokol Holdings, Inc. v. Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008)).

Plaintiffs in the instant case have adequately alleged facts, which if proven to be true, might provide an adequate basis for compelling arbitration on the basis of estoppel. Pursuant to the Agreement, Plaintiffs agreed to sell SMT to EMTC for $293,223. Though the Individual Defendants are not signatories to the Agreement, they have allegedly taken advantage of that Agreement by receiving approximately $10,000 per month in revenue from SMT. (*See* Dkt. # 1 at 9.) Additionally, the subject matter of the dispute between Plaintiffs and the Individual Defendants appears to be intertwined with the Agreement. According to Plaintiffs, the Individual Defendants induced Plaintiffs to enter the Agreement by fraudulently representing EMCT's assets. (*Id.* at 12.) If these facts are true, Plaintiffs have raised a plausible argument that the Individual Defendants are subject to the Arbitration Clause on the basis of Estoppel.

/ / /

## II. EMCT Is Bound By the Agreement's Arbitration Clause.

The Court next grants Plaintiffs' Request for Summary Disposition of the Petition as it relates to EMCT. According to the record, EMCT has been served with the Petition and has failed to file a responsive memorandum, though the time for doing so has expired. (*See* Dkt. ## 1; 35.) The record further provides that default was entered against EMCT on March 11, 2010. (Dkt. # 35.) Moreover, as a signatory to the Agreement, it is clear that EMCT has entered into a binding contract to arbitrate the claims against it. The Court, therefore, orders EMCT to submit to arbitration as set forth in Section 35.3 of the Agreement.

## CONCLUSION

Plaintiffs have alleged sufficient facts to survive the Individual Defendants' Motion for Judgment on the Pleadings. Under the exceptions to the general rule that a nonsignatory may not be compelled to arbitrate, Plaintiffs may be able to show that the Individual Defendants are subject to arbitration.

**IT IS THEREFORE ORDERED** that the Motion for Judgement on the Pleadings filed by Individual Defendants Erik Zeiner, Andrea McCoy, Kenneth McCoy, Nichole Malero, and Marco Arce (Dkt. # 22) is **DENIED**. The Individual Defendants, however, may again raise their challenge to arbitration on a motion for summary judgment.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Disposition Against Defendant EMC Telecom Corporation (Dkt. # 25) is **GRANTED**.

**IT IS ALSO ORDERED** that Plaintiffs' Motion for Leave to File a Surreply (Dkt. # 31) is **DENIED** as moot.

DATED this 16th Day of June 2010.

G. Murray Snow
United States District Judge